The Vice-Chancellor.
The testator has vested his whole estate, real and personal, in his executors as trustees, upon a variety of active trusts, which, if valid, confer upon them the entire legal title.
Their validity turns upon the construction of the residuary clause in the will.
After providing for his wife’s annuity, and the payment of pe *545 cuniary legacies to all his children, the testator directs the whole residue of his estate to be invested, so as to be safe and productive. No conversion of real estate is enjoined ; and he evidently contemplated that a part of the residue would be real estate, for he speaks of the rents and profits as forming a part of the income. It may be observed further, in this connection, that the residuary gifts are future estates and interests, and it is therefore wholly immaterial in the discussion of the validity of the trusts, whether the property be regarded as personal estate or as realty.. (See Arnold v. Gilbert, before the late assistant vice-chancellor, May 23, 1846.)(a)
Pursuing the will, the trustees are to pay the income arising from the whole residue, in equal parts or portions, to his children who shall then be living, and to the issue of any who shall have died, (the latter receiving, per stirpes;) until the sons should respectively attain the age of thirty years. As they respectively attain that age, they are to have and take respectively their joint and equal portions of the residue of the estate. The daughters, however, were to have merely the income of their shares or portions during life, for their separate use, and upon their death, the capital was to go to their respective heirs at law, and next of kin, as upon an absolute ownership of the daughters and their intestacy.
There is a further provision, that if either of the testator’s children, should die before any of the legacies or devises given to them respectively by the will, should vest or become due and payable, leaving lawful issue ; such legacy or devise should not lapse, but should descend or be paid to such issue, in the same manner as if such deceased child had lived until the legacies or devises to him, had vested or become due and payable; so that such issue should have, take, and receive the portion which would have been coming to their parent if living.
It is perfectly clear, that the interest of the five sons in the capital of the residue, is an expectant estate, which will never vest in possession, unless they attain the age of thirty. It was argued that they have vested estates in the residuary realty, *546 which are liable to be divested in the event of their dying before they become thirty. But that does not affect the point as to the suspense of the power of alienation. Whether their interest be deemed thus vested, or be contingent, it is equally certain that they cannot convey a valid title, until after they attain the prescribed age.
As to the personal property constituting the residue, their interest in the capital is entirely contingent.
Therefore if the residue must, by the terms of the will, remain in mass until some one of the sons, or until the eldest son shall attain the age of thirty years; the power of alienation of the realty, and the absolute ownership of the personal property, are suspended for the same period and upon the same contingency, and the trusts must be declared to be void. The statute restricts the suspension of alienation and ownership to lives, and upon life only. It does not admit of a suspense for a term of years, however short; nor as these trusts are, if to be thus construed, dependent in part upon life and in part upon a fixed period of time. (Hawley v. James, 16 Wend. 61; Boynton v. Hoyt, 1 Denio, 53; Thompson v. Carmichael’s Executors, 1 Sandf. Ch. R. 387.)
Is the residuary trust divisible at once into seven distinct shares, each to be held separately upon the prescribed trusts until the sons respectively become thirty years of age; or is it to be kept by the trustees entire, until some one of them, or until the eldest, attains that age 1
The direction as to the income, in the first place, treats it as an entirety. It is the income of the whole, which is to be divided equally; not the income of the respective shares to be paid to each. It is true that this form of gift is not decisive, and might be readily controlled by other clauses showing an intent to sever the interests of the respective children at the inception of the trust. But it is a circumstance to be weighed, and when not so controlled, is one of considerable importance..
Next, if any child die, leaving issue, before one of the sons becomes thirty, the issue of such child are not to take his share of the capital, but are still to receive their parents share of the income of the entire residue. This is a very strong circumstance to *547 show that there was to be no such division of the residue into shares, at the outset, as was contended by the executors. And it is in perfect harmony with the last paragraph of the will, which carries the absolute interest in the share of the deceased children to their respective issue, in the same manner, (and of course at the same time,) as if such children had lived until the devises and legacies had vested and became payable.
The provision for paying income to the issue of such children as shall die before the sons respectively become thirty, extends to the daughters as well as the sons. Such are its literal terms; and this construction is rendered indisputable, by the use of the same term, “ children,” in the last paragraph of the will, upon which I have just commented.
The same paragraph reflects a stronger light upon the residuary clause. It shows that the testator himself supposed he had so far made his principal devises and bequests contingent, that without further express provisions, the issue of such of his children as should die during the contingency, would be cut off from sharing in his estate. He thereupon sought to prevent a lapse by additional clauses. In those clauses, he uses technical and appropriate language, applying “ vest” in respect of the realty, and “becomepayable” in respect of the legacies; and the whole plainly shows that he had previously limited a period within which the devises and legacies to all his children should not vest or become payable. That period is found in the provision for investing the capital of the estate and paying the income to the children and their issue, equally, per stirpes, until the sons should respectively become thirty years of age.
The construction of this vital portion of the will, may be fuiv ther illustrated, by supposing that the trustees had acted upon the belief that the residuary trust was divisible in the outset; and after paying the debts, providing for the annuity, and setting apart what they deemed sufficient to meet the pecuniary legacies, and to support and educate the children ; they had divided the residue in seven equal shares, as nearly as it was practicable. From the nature of the case, these shares would consist of different kinds of property. Suppose further, that the share of Osgood Field, had consisted mainly of United States Bank stock, which *548 at that era was esteemed equal, as an investment, to any other known security, and it had remained thus invested until this day ; would Osgood Field, if he were now thirty years of age, be compelled to receive his seventh part of the estate in such a worthless investment? Would he not call on the trustees to show him the clause in the will which authorized them in 1834, to divide the residuary estate among the children of Moses Field, and apportion this security to one, and that house and lot to another ? Would he not point with conclusive force, to the provisions which I have noticed, as imperatively requiring them to keep the estate entire until his elder brother became thirty, if he should so long live; and if he should not, then until Osgood became thirty • and on the happening of the first event of that kind, for the first time to divide off one clear seventh part of the residuary estate ?
It appears to me that the positions which I have attributed to Osgood Field in the events supposed, are unanswerable; and that the testator did not expect or intend, to have the shares of any of his children in the capital of his residuary estate, either absolutely fixed, or the amount absolutely ascertained, until his sons respectively attained the age of thirty years.
The provision in a previous part of the will, authorizing the trustees from time to time to apply so much of the estate as to them might seem proper, necessary and reasonable, for the support and education of his seven children until they should respectively attain the age of twenty-two years; corroborates this construction. If the children all survived till the year 1852, his eldest son would then become thirty, while the two youngest would still be under twenty-two years of age. And the eldest by attaining his age of 22, would cease to be supported under this provision, eight years before he would take a vested interest in possession in the capital of the estate; during all which time he would need his share of the income of such capital, for his own maintenance.
It is therefore evident, that the provisions for education and support, and for distributing the income of the residue, were to be operative concurrently for a long period; and as the early death of the testator has established it, for a period of nearly *549 twenty-two years. And it follows, that out of the residuary trust estate, the trustees were to educate and support the children who were under twenty-two, before any distribution of the income of that residue. The extent of the expenditure which from time to time, would be requisite for such support and education, could not be anticipated with precision, nor any previous appropriation made or set apart for the purpose. If this conclusion be correct, it presents an insuperable obstacle to any severance of the residue into shares, at the testator’s death, corresponding with the number of the children. And this too, without resorting to the argument which was pressed by the heirs, that the trust for education and support enables the trustees to apply the capital as well as the income of the whole estate.
The intention of the testator, as in my judgment, it is expressed by the will in connection with the situation of his estate and his family, may be thus stated. His executors were to take his whole estate, except the portions specifically devised and bequeathed to his wife, and manage it under the ample powers bestowed in the introductory part of the will. They were to pay the annuity to his wife, and educate and support the children. If there were a surplus of income, after this was done, it became distributable equally among the seven children, and they were to have the same absolutely. As the sons respectively became twenty-two years of age, the executors were to pay them $10,000 each, and the further sum of $5000 each, on their becoming twenty-five. The daughters were to receive $3000 each on their marriage with consent, &c. As to both sons and daughters, their support from the estate at large was to cease at the age of twenty-two. The payment of these legacies from time to time, would reduce the residuary capital, and of course the net surplus income, which was to be divided among the seven children. If either of the sons should die before he became thirty, his share of the residuary estate would lapse if he felt no issue. If he left issue, they would take his proportion at the time when he would have become thirty, and in the mean time, would receive his share of the surplus income.
*550 When any of the sons became thirty years of age, he would withdraw his proportion of the capital, (a suitable deduction being made for the unpaid legacies,) and cease to participate in the income. This would be the first division of the estate; and the residue, at least the proportions of the remaining sons who were under thirty, would continue together in the hands of the executors, and be divided off as the sons respectively attained that age,
I think it was also the testator’s intention, (though not material in this case,) that if either of his sons died without issue before he became thirty, his proportion or share should fall into, or rather continue in, the residuary estate, and pass to all the surviving children and their issue under the will. If after one of the sons became thirty and had taken out his share, another of the sons should die under thirty and without issue; it might be necessary, if the will were upheld, to consider the testator as having died intestate as to the share thus lapsed.
As to the daughters, their interest were limited for their lives only, and upon their respective deaths, their proportions were to go to those who would have taken them by law, on their dying intestate in possession as absolute owners.
This brief outline of the testator’s intent, as derived from the will, confirms my construction upon its terms, that the residuary trust estate is to continue entire and undiminished, without regard to the dropping of the lives of his children, until one of his sons shall attain the age of thirty years. The trust is therefore void.
The will in this case differs from that of the late John Mason, which was before me when assistant vice-chancellor, (Mason v. Mason’s Executors, 2 Sandf. Ch. R. 432.) There the testator carved out distinctly, the equal undivided fourth parts of the half of his estate which he gave to the trustees; and each fourth part was separately bestowed upon the beneficiaries therein, and devolved separately, till its final vesting in posses-' sion; with a single exception as to the beneficiaries for life, which was found to be explicable in connection with the other provisions. In this case, there is no separation and no treatment of the property as existing in, or as being composed of, distinct *551 shares, until the period when one of the sons, by attaining his age of thirty, shall become entitled to one seventh of the residuary estate, and may withdraw it from the custody of the trustees.
The invalidity of the trusts, applies to the provisions for the daughters, as well as to those for the sons of the testator. If it were otherwise, the former could not be upheld, because of the consequent inequality and injustice. The daughters and their issue would each receive one-seventh of the estate, and then share equally with the sons in the remaining five-sevenths.
The bequests of the legacies must share the fate of the principal trusts. The testator’s whole plan for the division of his estate is not only disturbed : it is in effect destroyed, by its conflict with the rules of law. It is impossible for the court to say that the testator, if he could have anticipated this demo-^ lition of his scheme, Would still have bestowed the large legacies Upon his sons and the smaller sums on his two daughters, with their clogs and restrictions.
The legacies are to be raised out of the estate demised in trust. As I have already shown, they must be paid from time to time, out of the residuary fund, as they fall due; and the income from their amount until thus paid, forms a part of the income which by the will is to be used and appropriated for the support and education of the children while tinder twenty-two, and the surplus of which is to be distributed among all the children.
The legacies are thus interwoven with the void provisions of the will. They are part and parcel of the trust devise rendered null by those provisions; and I think that equity as well as sound morality, requires that they should be set aside, in common with all the more important directions of the testator respecting his family. As to the power to make the division or partition to the sons at thirty, its object being to carry out an illegal trust, it cannot be sustained.
There must be a decree, declaring that the testator died intestate as to all the property which by the will was designed for his children. All the acts of the executors in the execution of the will, are to be ratified and confirmed. As it will be difficult, *552 if not impracticable, to ascertain how much has been expended for the support and education of the elder children, the requisite equality between all the heirs may be effected, by directing the executors to pay to each of those who are under twenty-two years of age, such sum as may be deemed necessary for their support and education until they attain that age. The accounts of the executors must be passed by a master, who will report also upon the proper allowances for support and education. The master will ascertain what sum is necessary to provide for the result of the suit of C. A. Williamson and others against the heirs and executors of Moses Field, and what indemnity should be made to the executors in respect of the decree in that suit. The personal estate, after making provision for the suit of Williamson and others, is to be distributed among the children as next of kin. The costs of all the parties are to be paid out of the estate.

 3 Sand. Ch. R. 531.